May it please the Court, I am Charles Bundring, counsel for Sammy Gardner, the successor trustee of the 2014 PB Living Trust and the appointed independent executor of the probate. In determining whether or not parties have agreed in a contract to arbitrate particular claims, the first thing that the Court must do is determine whether or not a valid agreement to arbitrate exists between the parties. The second thing that the Court must do is to determine whether or not the particular claims and the disputes in question fall within the scope of the arbitration provision which the parties agreed to. I don't understand, they reached an agreement and money was put in the account and yet here we are? Can you explain that? Yes, I can, Your Honor. The foundation did not execute and deliver to the mediator who was the custodian or the agent, did not execute and deliver the indemnity agreement that was promised or the release agreement that was promised in the mediated settlement agreement. They breached and because of that breach, Mr. Gardner was forced to bring this action in federal court in the Eastern District of Texas. Gardner does not dispute there is a valid settlement agreement which contains a very narrow agreement to arbitrate, agreement to arbitrate the execution version which means the language or the verbiage of the mediated settlement agreement and the documents that were referenced in the mediated settlement agreement. The mediated settlement agreement anticipated that there will be additional documents that would have to be negotiated and executed between the parties including the release agreement, the settlement agreement, excuse me, the release agreement, the indemnity agreement, an agreement for Mr. Gardner to resign as trustee, motions to dismiss the litigation and Mr. Gardner's agreement to decline to serve as the independent executor. Gardner does not dispute that Gardner executed the mediated settlement agreement and he's entitled to enforce the promises that were made by the Foundation to Gardner in the mediated settlement agreement. But the Foundation cannot enforce the provisions of the mediated settlement agreement including the arbitration provisions because they materially breached by refusing to sign the indemnity agreement and the release agreement. Gardner's original complaint made the following claims against the Foundation which are not covered by the scope of the arbitration agreement. Foundation's material breach of the mediated settlement agreement by refusal to sign and to deliver to the arbitrator, excuse me, to the mediator, Mr. Yale, the mediated, excuse me, the release agreement and the indemnity agreement. Enforcement of the promises made to Gardner by the Foundation in the mediated settlement agreement, the Foundation's failure to execute and deliver the release agreement and the indemnity agreement. Okay. Y'all didn't brief the Rooker-Feldman. Is that because things were still, even though there was a final judgment, there were still things going on in state court and when that is happening and it's not totally finished, Rooker-Feldman doesn't apply? Doesn't apply, Your Honor. Okay. It was part of the motion to dismiss which the district court did not reach. The district court only reached the question of the scope of the arbitration agreement and that is why we're before the court today. There were other claims that were included in the original complaint, including the forfeiture of the beneficiary interest of the Foundation under the trust agreement, there's a forfeiture clause if a contest is made and an equitable reformation of the trust to substitute a different charitable beneficiary. Gardner filed a motion to leave to amend his complaint. The district court erred in denying that motion and that was error. The additional, the amended complaint, which was filed by Gardner, raised new issues that occurred after the filing of the original complaint, including violation of Chapter 59, violation of the rules of procedure, interference with Gardner's contracts, slander of title, quiet title, libel and slander, and negligence per se. Gardner has never filed a claim and Gardner has never challenged the execution version or the language or verbiage of the mediated settlement agreement. Gardner's claims and Gardner's disputes in the amended complaint, the original complaint, do not fall within the narrow scope of the arbitration agreement. The arbitration agreement was an agreement of the parties to arbitrate if there was a dispute concerning the full, final, and complete executed version, language, verbiage of the mediated settlement agreement and the anticipated documents that would have to be done. The arbitration provision is very narrow and it only deals with a dispute concerning the language that would have to be included in the additional documents. Therefore, the district court's dismissal of this case and ordering that all claims between Gardner and the Foundation had to go to arbitration was error. The Foundation's motion to dismiss, based upon the arbitration provision, did not contain any specifics with respect to the grounds. The Foundation's motion generally alleged that all of Gardner's claims were within the scope of the arbitration agreement. They are not. Additionally, the Foundation's motion to dismiss did not attach or make any reference to the Foundation's demand for arbitration. The question in this case is whether the Gardner's claims, excuse me, as containing the original complaint and the First Amendment complaint fall within the scope of the narrow arbitration provisions that the parties agreed to. They do not. The arbitration agreement in this case states, quote, any dispute related to the final, full and complete execution version of this agreement and the other documents referenced shall be submitted to arbitration. It does not say that the parties are going to arbitrate all claims or all disputes or that the parties would arbitrate any enforcement or any dispute concerning the terms of the mediated settlement agreement. It is the execution version. Execution version means the language that the parties were going to have to negotiate after mediation with respect to the other documents, the language, the verbiage that was going to be contained in the executed version. How does the language there of the district court know what, quote, the executed version means? I mean, the document isn't self-explanatory about that, is it? I mean, here what you're saying, what I'm trying to follow, you're arguing that the error is that the scope of the agreement is very, very narrow, and you're saying the district court read that too broadly, correct? Correct, correct. Okay, but then you're saying the executed version, I'm just trying to get past, what's the language in there that clearly imports what that means? Well, executed version, when the mediated settlement agreement was done, the parties contemplated that additional documents would have to be negotiated, the release agreement, the indemnity agreement, the agreement to resign, the motions, so those documents were not included as documents in the mediated settlement agreement. So the parties agreed that if there was dispute about the language, the executed version, or the verbiage that would be included in the release agreement, the indemnity agreement, and the other documents, that issue would go to arbitration, but only as to the version, only. Your argument is that the indemnity agreement was breached. They did breach it because they never executed or delivered the indemnity agreement. That's correct, Your Honor, and that's part of our original complaint, which under 12b, this court must presume to be true. This issue goes to the scope of this arbitration agreement. It's important to note that the arbitration agreement did not say that all disputes between the parties will be arbitrated. It did not say that. It did not say that any dispute with respect to the enforcement of the mediated settlement agreement would be arbitrated. It said that the executed versions, meaning the language and the verbiage in these additional documents, that is the very narrow scope of the arbitration agreement in this case. So, only the disputes that would go to the final, full, and complete execution version or disputes with respect to the language or the verbiage of these additional documents, only those are subject to arbitration. This arbitration provision is narrow, therefore, and is not broad as the district court found. And it does not cover the claims that were made by Gardner in the original complaint and the First Amendment complaint. Gardner and the Foundation did not agree to arbitrate any disputes between them. That's not in the arbitration agreement. They did not agree to arbitrate all claims between them. That's not in the arbitration agreement. They did not agree to arbitrate enforcement of the mediation settlement agreement. It was only the executed version, meaning the language and the verbiage, that they agreed to arbitrate. All right. So, where . . . how did the learned trial judge go wrong? Or said differently? I mean, what led the trial judge broader from the agreement than what you're articulating? The district court ordered that all claims, all claims between Gardner and the Foundation were subject to the arbitration agreement, and he dismissed the case, entered a final judgment, which we appealed. He interpreted this very narrow arbitration provision to be broad, to include, quote, all claims. Those all claims would include the claims that were in our first . . . our original complaint and First Amendment complaint. But if you look at the arbitration agreement and the wording in that agreement, it does not say all claims. It does not say all disputes. It does not say that the arbitration would be as to those matters. It only says full, final, and complete executed version, meaning the language that the parties were going to have to negotiate with respect to the additional documents. It's very narrow, and the district court construed it as being very broad. In your typical case, when you have an arbitration that has a broad claim, it would say things such as all disputes rising out of or related to a dispute of any kind, which just rises out of the mediated settlement agreement. But in this case, the arbitration provision is limited, and it is limited and it is narrow to only the execution version or language or verbiage. If there's a disagreement as to that, with respect to these additional documents, that's what the arbitration clause says needs to be arbitrated. The district court erred in relying upon Buck Creek cashing as well as poly flow, a decision of this Court, as well as PrimaPaint Corporation and Pennzoil. All of those cases involved cases in which the arbitration provision in question was extremely broad and included the terminology of all disputes, all claims related to and connection with the particular agreement in question. If you look at those cases and you look at the arbitration provisions in those cases, one of those cases in which Judge Higginbotham wrote the majority opinion for this Court, it was a broad arbitration provision. It included all disputes, all claims arising out of or related to. That is not the language of this arbitration agreement. That includes the Valentine Sugar's case, the Mitsubishi case, the McReynolds case, which were all cited by the foundation in their brief. Those are all cases in which if you look at the arbitration provisions that the Court was looking at, they were all very broad and do not comply with this particular provision of this particular arbitration agreement. Lastly, and secondly, as I close my opening, the District Court erred in not granting our motion for leave to file the amended complaint. No scheduling order had been entered. The case had been stayed. Nothing had been done except the filing of the original complaint and the motion to dismiss. Because of additional actions of the foundation, we filed a first amended complaint and asked leave. The District Court erred in not granting that leave for the additional claims. Well, that's going to be my question. What was the Court's reason for denying amendment? I don't know the exact reason for denying the amendment. The foundation argued that the amendment would be futile because of its motion to dismiss based upon arbitration. I don't know if that was the reason that the Court did it or did not, but they denied the amendment. The amendment must be freely granted, especially early in the case, so we can address these additional claims that came up. Those additional claims in the first amended complaint are not within the scope of this very narrow arbitration agreement. All right, so if we were to determine that you are correct, that the Court too narrowly or too broadly construed the arbitration agreement and went back, where would you be, back at still trying to amend the complaint and pushing forward or what? If you agree with us, Your Honor, Judge Stewart, you would reverse the final judgment, which dismissed all of our claims, send the Court back to the District Court, and at the District Court level, there could be an arbitration as to only the execution verbiage of these agreements, but that's a very narrow part of the arbitration. The other claims, which are the claims in the original complaint and first amended complaint, would then go to trial and be subject to jurisdiction of the District Court. Okay, but we would never get to the point that far. I mean, I'm just thinking out loud, I'm just saying if we thought you were correct, my sense is we would say very little in terms of . . . it's back down there for further proceedings, and I was just asking in theory what was left back with that and so on, but as to what else might, what happened and so forth. Reverse the final judgment, send it back to the District Court for the District Court to reconsider the issues that are before the District Court in his discretion. Okay. I just want to be clear in my head. I'm not saying that's where we're going. Counsel is going to tell us why that does not even need to bother me. Thank you, Your Honor. All right. Thank you. All right, Counsel. Good afternoon. Okay, Hazelwood. No, let me get my water. Judge . . . Both of y'all had a full dose of a huge criminal case and a huge dose of RLUIPA, and then some, and both of y'all need water to make your arguments up here. I know. The other people did the heavy lifting. And nobody seems particularly interested except your clerks. They are. Bankruptcy and arbitration. They're hostage. So you have . . . Judge Stewart, I would like to . . . I typically would like to begin with the last question answered, but I wanted to . . . Oh, I'm Kay Hazelwood. With me is Brandi Baxter-Thompson. Ms. Thompson is going to address the issues on the stay and the District Courts. That's how we split up our time. So, I'm not ignoring your question, Justice Stewart. She'll take care of it. Okay. No worries. Proceed. So, I want to begin with kind of Judge Haines' questions. Why are we here? Good question. Because when we settled the case, when we went to Roger Yale to mediate three cases and an appeal that existed between the parties, one of the things that they intended to do is create a vehicle, a procedural mechanism, if you will, so that the parties would have a method for resolving any future disputes. Had they intended, as Mr. Gundren has indicated, that the only thing that would go back to Roger Yale, the mediator, who was then appointed as the arbitrator under the MSA, they would not have used any dispute related to the execution version of this MSA. They would have said, I think as a fair construction, and Judge Jordan agreed with us, they would have used more limiting language like we saw in the Icahn case, which Mr. Gundren relied on in his appellate brief, in the opening brief. Limiting language like any dispute related to the execution of the documents or the language intended or required for the mutual indemnity and the settlement and the mutual release and the indemnity. They did not include that language. They left it very broad and simply said any dispute related to the MSA. Execution version of the MSA and related documents. Because I think, as this court well knows, that when the parties are, they understand the cost and expense of litigating. And so when, for example, in the Polyflow case that Mr. Gundren mentioned, Polyflow involved a pipe sale with an expert that had to be appointed to go out and review the pipe. And in that clause, they included any dispute related to language. And this court said, oh, that covers everything. So when the expert was fired, they said, well, wait a minute. Whether or not his inspection report meets the terms of the agreement, we have a dispute related to whether or not we have to take this pipe. This court said, yeah, that's got to go to arbitration. Because it's any dispute related to the transaction. So it's our position, the district court absolutely found that the clause was intended to be broad enough to cover any dispute arising under relating to, yes, Judge Haynes? I just wanted to ask, and you agree on the Rooker-Feldman is not in play. I mean, y'all didn't brief it, even though it was discussed in the district court. You agree it's not in play here. We argued below that the case did not belong in federal court. I know, but I'm saying y'all didn't brief it here. So I'm assuming you agree with your opponent who said it's not in play here. It's not in play in terms of it's not been fully briefed with respect to whether or not the court had subject matter jurisdiction. Footnote one and footnote four, it's a diversity case. He just did not consider the exceptions, which include the abstention doctrines, when he sent us to arbitration. He said, I'm sending y'all to arbitration. It's clear it goes to arbitration. And so he did not discuss the Rooker-Feldman or the Colorado-Brilhart abstention doctrines that we had raised. Or didn't consider our 12B6 arguments as well. Okay, but I noted that Rooker-Feldman is not in play because the state case was still in play, as opposed to being a final case. The underlying federal court, I'm sorry, Judge Haynes, I'm not following your question. I apologize. Okay, in Rooker-Feldman, when the state case is done and there's no time for appeal, nothing, then it is binding and you can't just go to federal court and dance around. But if it's still pending, even if something has happened in the trial court, if it's still pending, you can go to federal court. Well, it was our position below that under Rooker-Feldman, there was a substantial question in the court whether or not the court could do anything with the federal complaint because if you, under the rules for deciding whether or not something is subject to arbitration, you look at the factual allegations. And you look at what he's seeking to do in terms of what's the relief requested under the complaint. He was seeking to unwind the mediated settlement agreement, which he's just told this court as well, he was seeking to unwind the mediated settlement agreement. His demand for breach of contract was not that we didn't turn over, just that we didn't turn over the terms, compliant documents that were compliant with the MSA, his version of what he thought they should say, but also that we didn't turn over $1.5 million to Roger Yale after a second arbitration. So to change procedurally, we had the MSA. There were issues with respect to how much Mr. Gardner's attorneys could be paid under the terms of the MSA, so we invoked the arbitration clause and went to Roger Yale. We've had one arbitration. That arbitration was then in that proceeding, there was an issue with how much he was supposed to have been paid. We introduced evidence that his attorneys had been paid $350,000, $357,000 more than allowed under the mediated settlement agreement, so a final reasoned award then became a final judgment that said you don't get $1.5, you get $1.2. His breach of contract claim was that we didn't turn over $1.5. That's not what the judgment said. So to the extent that is an attack on a final judgment, that piece, I think there is a question about whether or not Rooker-Feldman applies to that piece. We didn't brief it here. We did not brief it here. I think it's because, like I said, the state court matter was still in play. Even though there was a judgment entered, it wasn't totally done yet because this was filed within the time for appealing there. And certainly, Judge Haynes, you remember from your time on the state court bench, a federal, excuse me, a state court district court has plenty of plenary power to enforce the terms of its judgment. So we, in fact, went back to the state court, and that's in the record. We went back to that state court to ask that state court to compel the parties to arbitration in accordance with the terms of the final judgment, which incorporated the MSA. So yes, and to that extent, there was plenary power that existed for the court to further entertain motions to compel compliance with the final judgment. Okay. You can keep going, but I think the fact that you didn't brief it shows you don't think Rooker-Feldman's in play here. So one of the other issues that I wanted to go over with respect to the scope is execution of the any versus all. The idea that any related to is not limited to just the executed version of the documents, but includes any dispute. And if you take a look at his complaint, his complaint is breach of contract, declaratory relief, that GSF refuses to execute the mature release. Now, that's kind of interesting, and this is the second part of his argument, that we can't go to arbitration at all with respect to anything except the executed documents, because we've materially breached the MSA. I'm frankly a little confused by what I heard today, because I think what he said is we go to arbitration for the arbitrator to tell us what the mutual indemnity and release should say, but the arbitration agreement is not enforceable because it was materially breached. I don't know how to reconcile those arguments. I don't think we can, which is why this court and the state courts below have said a material breach of the agreement does not render the arbitration provision in that agreement unenforceable. That's nonsense. If that were the law, every time an arbitration and a contract has an arbitration agreement, the other side just said, oh, you breached it, I don't have to arbitrate. We would never go to arbitration if material breach could invalidate an arbitration provision in toto, and this court recognizes that. The third issue that is at play here as well is the Supreme Court's decision in Spiseri. One of the things that we briefed only in supplemental briefing was that prior to Spiseri, a dismissal would have been appropriate. This court was one of the circuits, it was the 5th, the 9th, and I can't remember the other ones, the 7th, in which the court did not stay a case pending arbitration, so we submitted 28-J letter briefing on this, and it's not briefed in the opening brief or in the reply brief because it came out in the summer in May, I believe. And that issue is whether or not the case should be reinstated and stayed pending the application of the arbitration. And so the courts, we had requested they affirm if this court believes that Spiseri should apply, then our request for relief would be to remand in order for the district court to stay the underlying federal lawsuit until the arbitration is complete. And of course, with the application of Spiseri, we wouldn't even reach the merits of the order compelling arbitration. We would send it back to the district court, which at that point, the order wouldn't have been appealable. Are you federal court materials here inextricably intertwined with a state court decision? Intertwined with? I'm directing you back to the Rooker-Feldman doctrine. Yes, sir. And the question has to do with whether a claim presented to a federal court that is inextricably intertwined with a state court decision, not that it decides all the issues, it doesn't foreclose, it's just whether they're intertwined. Do you agree that's the metric under Rooker-Feldman? You didn't, I'm not sure what you, you took a position with regard to Rooker-Feldman. You hadn't argued it, but you were responding to my colleague's question. Well, it was our position that the case should be in one of two places, state court or arbitration. And one of the bases for arguing it should go back to the state court was because of the fact that there was a state court judgment. And the relief requested was essentially to unwind that state court judgment. Rooker-Feldman is essentially a federalism doctrine. And it forbids the United States District Courts from exercising jurisdiction in those circumstances. If they've effectively done that. The question comes down to if there were any, you certainly have called upon the federal courts to review a judgment of the state court. And the question I ask is whether or not that were claims presented that are inextricably intertwined with a state court decision. In other words, you still have some other state court matters there. A colleague suggested that Rooker-Feldman would not apply. And I'm going back to that question. In other words, it's, you know, Judge Higginbotham, which is why we presented both, I think it's very difficult to parse out a claim that is not arbitrable from claims that are. I don't think that you can. I don't think there's a single claim he's presented in the amended complaint that can be parsed out. And in that way, because the final judgment was also the MSA, Well, in effect of Rooker-Feldman here, it appeared to me that you go back in state court and proceed with whatever you've got. Right. And we attempted to do that and the state court was not willing to send us to arbitration until this case was disposed of. That's essentially what happened. We went to state court and we asked the state court to send us to arbitration and because, as most state courts are differential to federal courts, because the federal court decision had not been issued, he was not willing to enter. Pending, you mean? Huh? Because this case was pending, you mean? Yes, sir. Because this case was pending, he was not willing to send us to arbitration. I see. So that was a matter that was left in state court just waiting until we acted. Now, we didn't act. Yeah. We got to arbitration finally. We did in kind of a convoluted manner but yeah, we tried to get there through state court. He filed a federal court action instead and then the federal court said nothing goes to arbitration. The whole thing should be tried in federal court, which Judge Jordan fortunately decided that that was erroneous, that all of the matters touched on or had something to do with the disposition of the estate and trust to the foundation, the beneficiary of those matters. Putting Rooker-Feldman to the side, if it were jurisdictional, we notice that jurisdiction whether raised or not, but this isn't jurisdictional. It's a federalism issue. As my colleague to the left here has pointed out, Rooker-Feldman wasn't briefed and all that stuff so it would be an odd deal for us to issue an opinion pointing out on Rooker-Feldman when the lawyers who know the case better than we do did not brief or urge that issue. Aside from oral argument, having teased this out, I just want to bring you back on my time and say we've exhausted the discussion and heard about it and it's out there in the atmosphere, but what's before us prominently, counsel opposite says the district court erred because he construed the agreement too broadly. He should have construed it in a manner that it necessarily included these other agreements. He says breach of contract. You argue, as I gather, that the district court appropriately read the agreement as encompassing what happened here and if the parties meant for there to be more specificity, they would have, could have said so and they didn't. Is that right? Yes. They would have, could have, should have said so, exactly. Your position is we should affirm the district court? Yes. Affirm the district court. Gotcha. Yes, sir. I just want to make sure I'm clear on position before your colleague comes up. All right, Ms. Thompson. Thank you, Your Honor. May it please the court. The specific issue that I would like to address is with respect to Mr. Gardner's third point of error. Mr. Gardner has asserted that Judge Jordan failed, well, what he says is that he didn't grant leave to amend his pleadings. What the court should understand and recognize is that there was a stay in place. Early on in the case, we asked the court to stay discovery and Judge Jordan took it a step further and suggested, well, due to the jurisdictional questions that are before him, he chose to stay the discovery as well as any other pleadings to be filed in the case. His decision was that the motion to dismiss presented weighty legal questions that could be resolved without the need for discovery. Subsequently, Mr. Gardner filed a motion for leave to lift the stay and for leave to amend his complaint. At the time that he did that, he didn't provide any kind of proposed complaint, so it was not really clear what he was proposing to add to his complaint. He did eventually file a pleading that provided a number of what the Judge Jordan couched as purported new issues and those issues were considered by Judge Jordan and he decided that they didn't alter his analysis and he denied Gardner's request to lift the stay as moot. Just to look at the claims that he asserted in his first amended complaint, they're either related to the MSA or they were related to an action that was pending in the probate court in Denton County. Just to go back over this really quickly, on January 10, 2023, the probate court in Denton County issued a judgment whereby he approved the mediated settlement agreement and he confirmed the arbitration award that reduced the amount that Mr. Gardner was going to receive from $1.5 million to $1.2 million. That was a final judgment on January 10, 2023. I believe it was February 7th when Mr. Gardner proceeded to file his complaint in federal court. In the interim, the foundation tendered versions of the documents. They tendered a version of the indemnification agreement and the mutual release. Mr. Gardner tendered his own versions. They didn't agree. We then said, we want to go back to arbitration because that's where we need to go to decide which versions of these documents are the appropriate documents. Before that could happen, Mr. Gardner filed his complaint in federal court. At that point, any request by us to go to arbitration of the arbitrator or in the probate court was met with resistance because Mr. Gardner asserted that no, no, no. The federal court has jurisdiction. The federal court has to decide these issues. This does not go to arbitration and any attempt that we made to go to arbitration was forestalled by Mr. Gardner's complaint. Subsequently, in the summer of 2023, there was another lawsuit filed in Denton County in the probate court going back to the same court, different cause of action, whole new lawsuit because there was a belief that Mr. Gardner was attempting to take possession of funds that belonged in error. Several of the causes of action that he identifies in his first amended complaint are directly related to the state court action. For example, the Liz Pendens, that was a Liz Pendens filed in respect of the probate court action in Denton County. His complaints about negligence per se with respect to Chapter 59 of the Finance Code relates to a subpoena that was issued, a trial subpoena that was issued for records to be brought to the new lawsuit that was filed in the summer of 2023. Judge Jordan had all of these issues in front of him, reviewed them and determined that this is just part and parcel of the same. It goes to arbitration and should not be considered. It doesn't change the analysis and Mr. Gardner doesn't even discuss the standard to lift the stay. He goes into why he should be able to amend his complaint, but what Judge Jordan considered was the fact that amending the complaint wasn't going to change anything. It was futile. Thank you. Judge Stewart, you're exactly correct that the only issue before this Court is the issue of the district court's erroneous construction of the arbitration agreement and his dismissal of our case and ordering us to go to arbitration as to all claims. That's the only issue before the Court. Rockefellman was not addressed in the briefing in this case. It wasn't raised by the foundation in the briefing and the district court never ruled on the Rockefellman doctrine. Consequently, the only question before the Court is whether or not the district court correctly interpreted the construction of the scope of the arbitration agreement, because that's the order that he entered and that's the order that he ruled on. All right. Counsel, Opsith says that . . . she cites Icahn, I believe is the case, or cases that we have, which have spoken to more specific language, if you will. Yes. The district court construed if they meant more, they could have said so. They didn't, so why is . . . we hear your argument, but I mean why, when you talk about he should be inferred that these other agreements are contemplated by the parties, that's not in the language in the agreement, so isn't that a stretch for us to get to where you are? The mediated settlement agreement required that the parties execute additional documents, those documents being the release agreement and the indemnity agreement and that they execute and deliver those to Mr. Yale. Well, that's true, but that's different. I don't think there's a dispute about those other things being executed. The question is, did the language of arbitration necessarily include or exclude those other things? You're saying that the agreement contemplated all of that. It did, Your Honor, and the arbitration agreement specifically addresses, as I might refer the Court to, any dispute, and there was a dispute, related to the final, full, and complete execution version of this agreement and other documents referenced herein shall be submitted to binding arbitration. The arbitration agreement specifically contemplated that if there was a dispute as to the release agreement language or to the indemnity agreement language or any of the other documents that are referenced in the MSA as to the execution version, meaning the language or the verbiage if there was a dispute, that would go to arbitration. But that is the only thing that this arbitration agreement requires. This arbitration agreement never mentions a dispute or enforcement or for breach or anything else of the mediated settlement agreement. It does not mention anything other than the executed versions, meaning the language and the verbiage that the parties were going to have to negotiate as to the additional documents. Well, that's a reasonable argument, but it seems their version is reasonable also. We make a living out of telling people what they really meant when they, you know, we make a living, lifetime tenure, to tell smart people what they really meant when they sign complex papers. I mean, and it takes three of us to do it. I mean, seriously. So I'm just saying, I'm not trying to be facetious. The argument you make, I get it. But the argument they make, okay, if you meant all that, you didn't put it there. District Court heard all this. Both of y'all are super smart lawyers. Judge Jordan heard that, but he wasn't persuaded. So can you say as a matter of law that it's reversible error, the interpretation of the agreement that he made? I mean, it's reversible as a matter of law. Not whether it was. If we looked at it, it might have come up different. That's where I was stuck. Yes, it is reversible as a matter of law. The Court is well aware that in any agreement under Texas law, that the Court must apply the written words that the parties agreed to. That's federal and state law. Very clear. Don't need any briefing on that. So the written words do matter. And in this particular case, the written words of the arbitration provision says executed version. Meaning the language that the parties, if the parties have a dispute as to the language of these additional documents, that is the only thing that goes to arbitration. Not all of the other claims, not a breach of the mediated settlement agreement, but the executed version of these additional documents that were specifically identified to be negotiated in the MSA. Yes, sir. One final question. I was puzzled by the suggestions about the absence of, excuse my voice, of an implication of Rooker-Feldman. On April 11, 23, the Foundation filed a motion to dismiss for the District Court under 12A.1.136 in the motion to fill arbitration. It argued in part that the District Court did not have subject matter jurisdiction under the Rooker-Feldman doctrine and under the Barcomb probate exception. Is that correct or incorrect? That is what they moved for, Your Honor, as part of their motion to dismiss. It is the case that they invoked Rooker-Feldman. I just want to clarify that. They did invoke it in the District Court. The District Court did not rule on that issue, and it did not brief it here. I understand that. But it is jurisdictional. It might be if they were correct, but they aren't correct, that Rooker-Feldman would apply. And we briefed that with the District Court. The District Court did not rule that. I'm just suggesting to you it's not waivable. The existence of it is not waivable. And if I might, Your Honor. Whether it exists is a different question. If I might, Your Honor. We're not on different pages. I just want to make sure we're quite clear about this because it is a very powerful doctrine, and it's fundamental to the jurisdiction of this Court. And it's not narrowly read. If I might answer your question. My time has expired. May I answer your question? Go ahead. The Rooker-Feldman motion that was filed by the Foundation was based upon the probate case that was pending in the State Court. And that was a probate case. It was still pending today in the State Court. That was the pending case in the State Court at that time. They've also argued that there was another case that they filed later in Denton County Probate Court. This was filed in June of 2023 after we filed our case. Ms. Hazelwood mentioned that. That's not in the record. There's nothing in this record that indicates that they did that. So I don't believe if the Court analyzes Rooker-Feldman that Rooker-Feldman would apply. It hasn't been briefed. It's been waived. That's a different question. My notes said that it was applied. That wasn't in the motion, but that's a different question. And if the Court were to find that Rooker-Feldman would apply, then the Court would have to reverse the order of the District Court ordering arbitration for lack of subject matter jurisdiction. I suggest to you that if Rooker-Feldman applied, that we would lack jurisdiction and the case would be remanded to the District Court to continue. Thank you, Your Honor. All right. We appreciate it. That's why at least these three judges love oral argument because we like to hear from the lawyers. But it is the case. We take the cases as we get them, not as the way we would have shaped them. So we're going to decide the case based on the way it was presented to us. So thanks for your briefing and your oral argument. That concludes the argued cases that we have for the day.